**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

OUIDA S. RICHERSON,   :

   Plaintiff,     :

vs.        :   CIVIL ACTION NO. 04-0490-C

THE CANADA LIFE    :
ASSURANCE COMPANY, et al.,
        :
   Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This cause is before the Court on the defendants' joint motion to dismiss (Doc. 21; *see also* Doc. 22), plaintiff's brief in opposition to the motion to dismiss (Doc. 25), the defendants' reply brief (Doc. 29), plaintiff's sur-response brief (Doc. 30), the parties' oral arguments on March 16, 2005, plaintiff's amended complaint (Doc. 33), plaintiff's supplemental brief in opposition to the motion to dismiss (Doc. 34), and CHS/Community Health Systems, Inc.'s (hereinafter, "CHS/") supplemental brief in support of the joint motion to dismiss (Doc. 36). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings, including disposition of this motion. (Doc. 35 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case

consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, and order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 37 (order of reference signed by Senior United States District Judge Charles R. Butler, Jr., on April 28, 2005)) Upon consideration of the contents of the briefs and the arguments of counsel, the Court **GRANTS IN PART** and **DENIES IN PART** the joint motion to dismiss.

## FINDINGS OF FACT

1.      Ouida S. Richerson filed a four-count complaint in this Court on July 27, 2004, against The Canada Life Assurance Company and CHS/arising out of the denial of her claim for long term disability benefits. (Doc. 1) Count I of the complaint was a statutory penalty claim arising under 29 U.S.C. § 1132(c)(1) due to the Plan Administrator's failure or refusal to provide those documents requested by plaintiff pursuant to 29 U.S.C. § 1024(b)(4) (*id.*, ¶¶ 27-31); Count II of the complaint was a claim for wrongful denial of long-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) (*id.*, ¶¶ 32-36); Count III of the complaint was a claim for breach of fiduciary duty (*id.*, ¶¶ 37-42); and Count IV of the complaint was a claim for fraud in the inducement under Alabama law (*id.*, ¶¶ 43-47). The specifically-plead facts underlying the four causes of action were, as follows:

10. Beginning in June of 1998, Plaintiff was employed at South Baldwin as a registered nurse, becoming a full-time employee in January of 1999.

11. Upon information and belief, Defendant, CHS, purchased South Baldwin and took over administrative operation of the hospital in May of 2000.

12. Plaintiff suffered a series of heart attacks beginning in November of 1999, requiring a series of medical leaves from work.

13. In May of 2000, representatives of CHS addressed a group of South Baldwin employees, including Plaintiff, in a series of meetings regarding insurance coverages offered under the Plan. The discussions included coverage offered for long term disability insurance for South Baldwin employees through Canada Life.[1]

_____

[1] The plan is entitled: "COMMUNITY HEALTH SYSTEMS, INC. GROUP LONG TERM DISABILITY INSURANCE PLAN." (Doc. 24, Exhibit A, CL00061) The policy contains a statement to insureds that The Canada Life Assurance Company has issued "GROUP DISABILITY INCOME POLICY 13648 LTD" to Community Health Systems, Inc. (*id*. at CL00064); the plan nowhere else contains any mention of CHS (*see id*. at CL00065-CL00110) until the reader gets to the page entitled "SUMMARY PLAN DESCRIPTION INFORMATION" same reading as follows:

1. The Name of the Plan is Group Long Term Disability Plan.

2. The Name and Address of the Policyholder is:

   Community Health Systems, Inc.
   155 Franklin Road Suite 400
   Brentwood, TN 37027

3. The Employer Identification Number is 76-0137985.

4. The Plan Number is 504.

14.    At one or more of these meetings, Plaintiff and other South Baldwin employees inquired about coverage for long term disability insurance, particularly with respect to the applicability of any pre-existing condition exclusions associated with such insurance coverage.

15.    In response to the inquiries regarding pre-existing condition exclusions, the CHS representatives represented to Plaintiff and other South Baldwin employees that all pre-existing condition exclusions for all insurance would be waived, but that

_____

5.    The type of Plan is Group Long Term Disability Benefits.

6.    The type of Administration is Policyholder Administered.

Benefits under this plan are provided through insurance in accordance with the terms and conditions of the group contract issued by the Claims Administrator who is The Canada Life Assurance Company, Atlanta, Georgia 30348.

You must be eligible in order to be entitled to benefits under the plan. The eligibility requirement of the plan and the benefits You are insured for are explained in detail in the General Definitions portion of this booklet.

7.    The Name, Address and phone number of the Plan Administrator is:

Community Health Systems, Inc.
155 Franklin Road Suite 400
Brentwood, TN 37027
(615) 373-9600

8.    The Agent for Service of Legal process on the Policyholder is:

Community Health Systems, Inc.
155 Franklin Road Suite 400
Brentwood, TN 37027

(*Id*. at CL00107)

4

this was the only time that South Baldwin employees could sign up for insurance with a waiver of the pre-existing condition exclusion.

16.     At the meetings, Plaintiff and other South Baldwin employees were provided with packets containing applications for various types of insurance, including long term disability insurance.

17.     Plaintiff, in reliance upon representations by CHS' representatives regarding the waiver or non-applicability of pre-existing condition exclusions, completed applications for various types of insurance, including long term disability insurance through Canada Life.

18.     The application for long term disability insurance did not contain any questions regarding Plaintiff's health or health history, and did not contain any reference to an exclusion for pre-existing medical conditions.

19.     Plaintiff signed the application for long term disability insurance and delivered same to the human resources department of South Baldwin.

20.     Pursuant to Plaintiff's application, Canada Life issued a policy of insurance providing long term disability benefits (hereinafter "the Policy"), and Plaintiff began to pay premiums on such Policy.

21.     At the time Plaintiff signed and delivered the application for long term disability insurance, she requested personnel in the human resources department at South Baldwin to provide her with a copy of the Policy or a certificate of insurance for the Policy. Plaintiff repeated this request on numerous occasions thereafter, but was never provided with a copy of the Policy or a certificate of insurance.

22.     Plaintiff continued to experience heart problems, and, in February of 2002, underwent bypass surgery. Following

5

the bypass surgery, Plaintiff was permanently and totally disabled, and Plaintiff's doctor advised her that she would not be able to return to any type of work.

23.   In or around mid-May of 2002, Plaintiff filed a claim under the Policy for total disability with Canada Life. At this time, Plaintiff again requested a copy of her disability Policy from the human resources department at South Baldwin, but did not receive a copy.

24.   By letter dated August 21, 2002, Canada Life denied Plaintiff's claim for long term disability benefits based upon Plaintiff's pre-existing heart condition, citing an alleged exclusion in the terms of the Policy.[2]

_____

[2]   This letter reads, in relevant part, as follows:

We are writing you regarding your Long Term disability (LTD) claim, and further to our recent telephone conversation. We have reviewed your claim and determined that you are not eligible for benefits under this policy due to an exclusion for Pre-existing medical conditions.

According to policy 13648:

### PRE-EXISTING CONDITION EXCLUSION

No amount of Monthly Income Benefit will be payable for any disability which is caused by, contributed to by, or resulting from a Pre-Existing Condition. A Pre-Existing Condition is any Injury, disease, Sickness, Pregnancy or mental disorder for which You did or an ordinarily prudent person would have done *any* of the following within *12 months* prior to the date on which You became insured under this policy:

1.   visited or consulted a physician, hospital or medical facility *or*

2.   took clinical tests or received treatment. This includes (but is not limited to) taking pills, injections or other medication to treat any condition.

This exclusion will not apply if the Elimination Period for the disability begins after the

25.    By letter dated January 14, 2003, Plaintiff, through counsel, responded to the denial of claims letter and requested production of the Policy, enrollment forms, Plaintiff's application and other documents relating to the Policy and Plan.[3]

_earlier_ of the following:

1.    The date on which You have been insured under this policy for at least _twenty-four months,_ or

2.    The date You have been free of treatment for a Pre-Existing Condition for a period of _twelve consecutive_ months while Insured under this policy.

As you were insured under this policy since June 1, 2000, and you became disabled within twenty-four months of coverage, your claim was subject to a Pre-existing condition investigation. The period June 1, 1999 through May 31, 2000 was under review. It was noted that you underwent a surgical procedure, Coronary Balloon Angioplasty for Coronary Artery Disease on May 10, 2000.

Based on the medical information provided, as you received treatment within 12 months of becoming insured, your disability falls under the Pre-Existing Condition policy exclusion and your claim is therefore denied. We regret that our decision could not have been more favorable.

(Doc. 24, Exhibit A, Administrative Record, at CL 00013-00014)

The disability claims analyst who wrote the denial letter, Danielle Leclerc, copied Deborah Gillen in the Human Resources Department at South Baldwin Regional Medical Center with same. (_Id_. at CL 00015-00016)

[3]    The plan documents contain the following "STATEMENT OF ERISA RIGHTS":

As a participant in this Group Plan, You are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974. ERISA provides that all plan participants shall be entitled to:

1.    Examine, without charge, at the Plan Administrator's office and at other locations (work sites and union halls), all plan documents, including

7

An identical request for documents was made to the human resources department at South Baldwin, also by letter dated

_____

insurance contracts and copies of all documents filed by the plan with the U.S. Department of Labor, such as annual reports and plan descriptions.

2.     Obtain copies of all plan documents and other plan information upon written request to the plan administrator. The administrator may make a reasonable charge for the copies.

3.     Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary financial report.

4.     File suit in federal court, if any materials requested are not received within 30 days of the participant's request, unless the materials were not sent because of matters beyond the control of the administrator. For violations that occur after July 29, 1997, the court may require the plan administrator to pay up to $110.00 for each day's delay until the materials are received. For violations that occurred on or before July 29, 1997, the court may require the plan administrator to pay up to $100.00 for each day's delay until the materials are received.

In addition to creating rights for plan participants, ERISA imposes obligations upon the persons who are responsible for the operation of the employee benefit plan. These persons are referred to as "fiduciaries" in the law. Fiduciaries must act solely in the interest of the plan participants and they must exercise prudence in the performance of their plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused the plan.

Your employer may not fire You or discriminate against You to prevent You from obtaining a welfare benefit or exercising Your rights under ERISA.

(Doc. 24, Exhibit A, Administrative Record, CL 00109)

8

January 14, 2003.[4]

      26.     Neither Canada Life nor CHS has provided Plaintiff with copies of any documents relating to the Plan or the Policy issued to Plaintiff thereunder, nor otherwise responded to Plaintiff's requests for information.

(*Id.*, at ¶¶ 10-26)

      2.     Plaintiff amended her complaint on March 30, 2005. (Doc. 33) In the amended complaint, Richerson makes the same factual allegations, save with respect to factual allegations 9, 10, 16, 19, and 24 (which were factual allegations 10, 11, 17, 20, and 25 in the original complaint). (*Compare id.* at ¶¶ 9-25 *with* Doc. 1 at ¶¶ 10-26)

      9.     Beginning in June of 1998, Plaintiff was employed by Foley Hospital Corporation d/b/a South Baldwin Regional Medical Center ("South Baldwin") as a registered nurse,

---

[4]     (*See also* Doc. 25, Exhibit B, Affidavit of Kerin L. Hoffman, at ¶¶ 3-7 ("It is the usual business practice of Mr. March to dictate correspondences. I then type the correspondence and present it to Mr. March for his review and signature. [] Once the correspondence is signed by Mr. March, it is my usual business practice to make a copy of the signed correspondence for the file before mailing it to the addressee. [] A file copy of the correspondence is only placed in the appropriate file, after it has been mailed. If a copy of any correspondence is in the file, it indicates that it has been mailed by the addressee. [] Two letters dated January 14, 2003, copies of which are attached hereto as Exhibit 1, appear in the file of Ouida Richerson. One is addressed to Ms. Pam Brunson, Director of Human Resources at South Baldwin Regional Medical Center, 1613 North MacKenzie Street, Foley, Alabama 36535. The other is addressed to Ms. Danielle Leclerc, Disability Claims Department at Canada Life Assurance Company, P.O. Box 105025, Atlanta, Georgia 30318-5025. [] The fact that copies of these letters appear in the file indicate that they were mailed, complying with the usual business of Mr. March and myself."))

becoming a full-time employee in January of 1999.

10.     Upon information and belief, Defendant, CHS, purchased South Baldwin, or otherwise became affiliated with South Baldwin, and took over administrative operation of the hospital in May of 2000.

.       .       .

16.     Plaintiff, in reliance upon representations by CHS' representatives regarding the waiver of pre-existing condition exclusions, completed applications for various types of insurance, including long term disability insurance through Canada Life.

.       .       .

19.     Pursuant to Plaintiff's application, Canada Life Assurance Company ("Canada Life") issued a policy of insurance providing long term disability benefits (hereinafter "the Policy"), and Plaintiff began to pay premiums on such Policy.

.       .       .

24.     By letter dated January 14, 2003, Plaintiff, through counsel, responded to the denial of claims letter and requested production of the Policy, enrollment forms, Plaintiff's application and other documents relating to the Policy and Plan. An identical request for documents was made to CHS through the human resources department at South Baldwin, also by letter dated January 14, 2003.

(Doc. 33, ¶¶ 9-10, 16, 19 & 24)

3.     In the complaint, as amended, plaintiff pursues no claims against Canada Life (*see* Doc. 33) and her sole claims against CHS/ are a statutory penalty claim arising under 29 U.S.C. § 1132(c)(1) due to the Plan

Administrator's failure or refusal to provide those documents requested by plaintiff pursuant to 29 U.S.C. § 1024(b)(4) (*id*. at ¶¶ 26-30) and a breach of fiduciary duty claim (*id*. at ¶¶ 31-36). In the brief accompanying the amended complaint, plaintiff makes clear that she is asserting a breach of fiduciary duty claim under the "catch all" provision of ERISA, 29 U.S.C. § 502(a)(3). (Doc. 34, at 5)

## CONCLUSIONS OF LAW

### A.    Motion to Dismiss Standard.

1.     The defendants' joint motion to dismiss is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 21)[5]   Accordingly, "[t]he allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff." *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (citation omitted); *see also Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir. 2002) ("This court must accept the allegations set forth in the complaint as true for the purposes of a motion to dismiss."), *cert. denied*, 537 U.S. 1172, 123 S.Ct. 1000, 154 L.Ed.2d 914

---

[5]     The defendants collectively filed the motion to dismiss but subsequent thereto plaintiff amended her complaint to name CHS/ as the sole defendant and to assert only a statutory penalty claim and a breach of fiduciary duty claim against CHS/. Accordingly, all claims originally asserted against Canada Life are **DISMISSED WITH PREJUDICE** and the state-law and denial of benefits claims stated against CHS/ are, as well, **DISMISSED WITH PREJUDICE**.

(2003); *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002) ("We must accept the allegations set forth in the complaint as true for purposes of a motion to dismiss."). "A motion to dismiss may be granted only when a defendant demonstrates "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Kirwin v. Price Communications Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004) (citations omitted).

> Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist. [C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims.

*Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262-1263 (11th Cir. 2004) (internal quotation marks and citations omitted).

   **B.      Statutory Penalty Claim**.

   2.      29 U.S.C. § 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." (footnote

omitted). The failure or refusal of the plan administrator to provide such documentation to a requesting party subjects it to the civil penalties set out in 29 U.S.C. § 1132(c)(1). "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary  in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." *Id*.

      3.     In her complaint, as amended, plaintiff has asserted the statutory penalty claim solely against CHS/, as plan administrator of the South Baldwin Regional Medical Center Employee Benefits Plan. (Doc. 33, at ¶ 30) The parties are now in agreement that CHS/ was the plan administrator of the long-term disability plan at issue in this case. (*See* Doc. 36, CHS/'s Supplemental Brief in Support of the Joint Motion to Dismiss, at 2 ("[T]here is no evidence that CHS/, in its capacity as Administrator of the LTD Plan, manifested an intent to the Plaintiff that the director of Human Resources at the Foley Hospital Corporation d/b/a South Baldwin Regional Medical Center . . . was its agent for

purposes of accepting requests for plan documents and other information or to respond to such requests under Section 104(b)(4) of ERISA[.]"))   This recognition is in line with the contents of the long-term disability policy which specifically identifies CHS/ as the plan administrator and, therefore, a statutory penalty claim can be pursued against CHS/.

4.     Plaintiff made a written request for plan documents to the Human Resources Director at South Baldwin Regional Medical Center, Pam Brunson, as opposed to making such a request directly to CHS/. The defendant makes the facially-appealing argument that since plaintiff made no written request to it for plan documents, plaintiff can state no statutory penalty claim against it. However, it is clear that "[u]nder appropriate circumstances, a § 1132(c) penalty may be based on information requests . . . that were not directed to the plan administrator." *Wilcott v. Matlack, Inc*., 64 F.3d 1458, 1461 (10th Cir. 1995) (citations omitted); *see also Conowall v. Administrative Committee for the General Instrument Corp. Pension Plan (1985) for Salaried and Hourly Nonunion Employees (G.I. Plan)*, 1989 WL 79800, *2 (E.D.Pa. 1989) ("[A] proper request need not be mailed directly to the administrator in order to invoke application of section 1132(c)(1)(B)."); *see McKinsey v. Sentry Ins.*, 986 F.2d 401, 404 (10th Cir. 1993) ("If in practice, company personnel other than the plan administrator routinely assume responsibility for answering

requests from plan participants and beneficiaries, a plaintiff's suit against the plan administrator will not necessarily fail[.]").[6]    In this case, the enrollment package given to Richerson specifically provides that "CHS and *any of its affiliates*, in their sole discretion, reserve the right to terminate, change, interpret, withdraw or add to any of the plans, policies or procedures described in these pages . . . at any time, without prior notice or consultation with any employee." (Doc. 21, Exhibit A to Declaration of Pam Waterman, at CHS00053 (emphasis supplied)) Plaintiff alleges in her complaint, as amended, that CHS/ took over administrative operation of South Baldwin in May of 2000 and, during oral arguments on March 16, 2005, counsel for CHS/ admitted that CHS/ and South Baldwin are affiliated companies. In fact, it appears clear from the administrative record, more specifically the Disability Claim Employer Statement, that South Baldwin Regional Medical Center is a subsidiary or

---

[6]    While this Court requested the parties to address whether the South Baldwin Regional Medical Center's Human Resources director had the apparent authority to act as the plan administrator for purposes of plaintiff's statutory penalty claim and such authority has been found to exist, "'whenever a principal manifests to a third person that an officer or agent may act in its behalf, and the third person in good faith believes that the authority exists[,]'" *United States v. Gil*, 657 F.2d 712, 715 (5th Cir. 1981); *see also Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 989 (3rd Cir. 1995) ("It is well settled that apparent authority (1) 'results from a manifestation by a person that another is his agent' and (2) 'exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized.'"), upon further reflection, the Court finds that it need not explore the possible application of that doctrine under the circumstances of this case.

division of CHS/. (Doc. 24, Exhibit A, Administrative Record, at CL00028)[7] When such association is combined with the import of the package of information given to Richerson and with the fact that Canada Life copied South Baldwin's Human Resources Department with all of their letters and, in turn, made all document requests to that department[8] and not CHS/ (*see* Doc. 24, Exhibit A, Administrative Record, at CL00004-CL00006 (documenting telephone conversations between Canada Life and South Baldwin's Human Resources Department); CL00013-CL00016 (Canada Life's denial letter copied to Deborah Gillen in South Baldwin's Human Resources Department); CL00017 (Canada Life letter to Smith copied to Deborah Gillen); CL00022 (Canada Life letter to Smith copied to South Baldwin's Benefits Department requesting a

---

[7]     The enrollment package which plaintiff received on May 17, 2000, describes South Baldwin Regional Medical Center as a CHS Hospital (Doc. 21, Exhibit 1 to Waterman declar., at CHS00077) and, states, moreover, with respect to employee benefits that "[t]his summary will help you understand more about what it means to be **part of Community Health Systems**" (*id*. at CHS00074).  This package also contained a Salary Reduction Agreement to be signed by the employee and an authorized Human Resources individual in order to receive benefits under the plan. (*Id*. at CHS00065)

[8]     *Cf. Hamilton v. Allen-Bradley Co., Inc.,* 244 F.3d 819, 824 (11th Cir. 2001) ("Hamilton offers testimony by Lee to the effect that Allen requires its employees to go through its human resources department in order to obtain an application for disability benefits. This fact places Allen in sufficient control over the process to qualify as the plan administrator notwithstanding the language of the plan booklet.").

copy of the Group Life Enrollment Form);[9] CL00024 (fax cover sheet from Deborah Gillen at South Baldwin to Danielle LeClerc at Canada Life to which she attached the enrollment forms LeClerc requested on plaintiff)), the Court is led to the conclusion **on motion to dismiss** that Richerson's written request for plan documents to South Baldwin's Human Resources Department was effective as to CHS/ such that CHS/ can be held liable, as plan administrator, for the statutory penalty set forth in 29 U.S.C. § 1132(c)(1)(B).

  **C.     Breach of Fiduciary Duty**.[10]

  5.     The Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S.Ct. 1065, 1079, 134 L.Ed.2d 130 (1996) determined that § 502(a)(3) "is a 'catchall' provision that authorizes only 'appropriate' equitable relief, and, thus, 'where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."''" *Jones v. American Gen'l Life & Acc. Ins. Co.*, 370 F.3d 1065, 1073 (11th Cir. 2004); *see also Hamilton,*

---

[9]     The administrative record establishes that though the enrollment forms contain CHS/'s name, they were in the possession of South Baldwin. (*Compare id. with* Doc. 24, Exhibit A, Administrative Record, at CL00025-CL00027)

[10]     Richerson concedes that she has no standing to assert a breach of fiduciary duty under § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2). Therefore, the only question is whether she may assert a breach of fiduciary duty claim under § 502(a)(3), 29 U.S.C. § 1132(a)(3).

*supra*, 244 F.3d at 826 ("[T]he Supreme Court[, in *Varity*,] concluded that any

losses, the remedy of which was not contemplated within ERISA, provide a

private right of action through the catch-all phrase of 29 U.S.C. § 1132(a)(3).");

*Wanza v. Aetna Health, Inc.,* 352 F.Supp.2d 1320, 1322 n.4 (S.D. Fla. 2005)

("The Supreme Court held in *Varity* that the 'catch-all' provision under §

1132(a)(3) could also provide for an individual remedy for breach of fiduciary

duty, but only if no other provisions in ERISA provided appropriate relief.").

> [T]he relevant concern in *Varity*, in considering whether the plaintiffs had stated a claim under Section 502(a)(3), was whether the plaintiffs also had a cause of action, based on the same allegations, under Section 502(a)(1)(B) or ERISA's other more specific remedial provisions. As the Court explained, the purpose of Section 502(a)(3) was to "act as a safety net, offering appropriate equitable relief for injuries caused by violations [of ERISA] *that § 502 does not elsewhere adequately remedy*." *Id.* at 512, 116 S.Ct. at 1078 (emphasis added). The relief that the plaintiffs sought in their complaint was not relevant to this inquiry.

> As we recently explained in *Ogden v. Blue Bell Creameries U.S.A., Inc.,* 348 F.3d 1284 (11th Cir. 2003), and as *Varity* itself makes clear, "[t]he central focus of the *Varity* inquiry involves whether Congress has provided an adequate remedy . . . *elsewhere in the ERISA statutory framework*." *Id.* at 1288 (internal quotations omitted) (emphasis added); *see also Varity*, 516 U.S. at 515, 116 S.Ct. at 1079 (stating inquiry as whether '*Congress* elsewhere provided adequate relief for a beneficiary's injury") (emphasis added). **Thus, for purposes of establishing whether the Appellants had stated a claim under Section 502(a)(3), the district court should have considered whether the allegations supporting the Section 502(a)(3) claim were also sufficient to state a cause of action under Section**

**502(a)(1)(B), regardless of the relief sought, and irrespective of the Appellants' allegations supporting their other claims.**

*Jones, supra,* 370 F.3d at 1073-1074 (emphasis supplied); *see Kennedy v. Metropolitan Life Ins. Co*., 357 F.Supp.2d 1346, 1349 (M.D. Fla. 2005) ("In determining whether Plaintiff can state a claim under § 1132(a)(3), the relevant inquiry is whether Plaintiff 'also has a cause of action, based on the same allegations, under Section 502(a)(1)(B) or ERISA's other more specific remedial provisions.'").

6.    It is clear to the Court that plaintiff's allegations, as set forth in the complaint, as amended, support not only a claim under § 502(a)(3) but, as well, a claim under § 502(a)(1)(B). Accordingly, plaintiff cannot maintain a breach of fiduciary claim against CHS/ under § 502(a)(3). In other words, this Court finds that plaintiff has an adequate remedy under § 502(a)(1)(B) and, therefore, she cannot alternatively plead and proceed under § 502(a)(3).[11] *See*

---

[11]    In reaching this determination, the Court notes that "the availability of relief under Section 502(a)(3) [is] in no way dependent on the success or failure of the Section 502(a)(1)(B) claim because 'the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor.'" *Ogden v. Blue Bell Creameries U.S.A., Inc.,* 348 F.3d 1284, 1287 (11th Cir. 2003) (citations omitted); *see Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1089 (11th Cir. 1999) ("At the time the December 17, 1997, order was entered, Mrs. Katz had an adequate remedy under § 1132(a)(1)(B), a position which she was strenuously asserting in Count I of her complaint. As it later turned out, we know that she did not prevail on the merits of that claim. However, the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor."). Therefore, the fact

19

*Ogden, supra,* 348 F.3d at 1288 ("We hold that the Ogdens had no cause of action under Section 502(a)(3) because Congress provided them with an adequate remedy elsewhere in the ERISA statutory framework."); *Kennedy, supra,* 357 F.Supp.2d at 1349 ("Applying the *Jones* analysis to Plaintiff's proposed Count One, it is apparent that the allegations supporting Plaintiff's § 1132(a)(3) claim are sufficient to state a claim under § 1132(a)(1)(B), 'regardless of the relief sought, and irrespective of the [Plaintiff's] allegations supporting [her] other claims.'").

7.    The relief requested by the plaintiff in Count II, specifically an order "declaring that the pre-existing condition exclusion contained in the Plan is waived" (Doc. 33, at ¶ 36), is legal relief as opposed to equitable relief. *See Caffey v. UNUM Life Ins. Co.,* 302 F.3d 576, 583-584 (6th Cir. 2002) ("In *Mertens* [*v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)], the Supreme Court held that the term 'equitable relief' in 29 U.S.C. § 1132(a)(3) refers only to 'those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).' . . . *Mertens* made clear that compensatory and punitive damages are not considered 'equitable relief' for the purposes of 29

---

that plaintiff has now amended her complaint to take out the claim for benefits under § 502(a)(1)(B) is of no moment.

U.S.C. § 1132(a)(3). . . . Although the *Mertens* Court did conclude that 'equitable relief' included restitution, the Supreme Court has recently explained that only traditionally 'equitable' restitutionary remedies are available under this section. . . . In order to give the term 'equitable relief' meaning, the Court explained, courts must 'limit restitution to the return identifiable funds (or property) belonging to the plaintiff and held by the defendant–that is, . . . limit restitution to the form of restitution traditionally available in equity.'"); *cf. Flint v. ABB, Inc.,* 337 F.3d 1326, 1331 (11th Cir. 2003) ("The [Supreme] Court [in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)] instructed that, in determining whether relief 'is legal or equitable in a particular case (and hence whether it is authorized by § 502(a)(3)) remains dependent on the nature of the relief sought,' and the Court resisted plaintiffs' attempt to characterize their claim for enforcement of a reimbursement provision of an ERISA plan as one for equitable restitution."), *cert. denied,* 540 U.S. 1219, 124 S.Ct. 1507, 158 L.Ed.2d 153 (2004). In other words, the Court agrees with CHS/ that the relief requested by plaintiff in her amended complaint is nothing more than an attempt to circumvent the *Knudson* decision which precludes an award of compensatory damages under § 502(a)(3) of ERISA. Because CHS/ did not issue the LTD Policy and is not the insurer, an award by this Court waiving the pre-existing condition exclusion against CHS/

would compel CHS/ to pay the disability benefits plaintiff claims she should have received under the disability policy; that is, it would compel the payment by CHS/ of compensatory damages. Because an award of compensatory damages is not "appropriate equitable relief" under § 502(a)(3), *see Knudson*, 534 U.S. at 210, 122 S.Ct. at 713 ("'Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' . . . And, '[m]oney damages are, of course, the classic form of *legal* relief.'"), plaintiff has failed to state a claim for relief under § 502(a)(3).

## CONCLUSION

In light of the foregoing, the joint motion to dismiss (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** with respect to plaintiff's statutory penalty claim stated against CHS/. The motion is **GRANTED** with respect to all claims originally asserted against The Canada Life Assurance Company, the state-law fraud claim originally asserted against CHS/ and the denial of benefits claims asserted against CHS/.

**DONE** and **ORDERED** this the 2nd day of May, 2005.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**